# SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program (collectively, the "United States"), the State of Michigan ("State") (collectively with the United States as the "Governments"), and Edward W. Sparrow Hospital Association d/b/a Sparrow Medical Group, Sparrow Care Network, and Sparrow Health System (collectively referred to as "the Defendants"), and Relator Patricia Crowe, M.D. (Hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.  Defendants in their various capacities employ independent physicians and Advanced Practice Providers, and include, among other things, a non-profit system that encompasses hospitals, a health maintenance organization, and home health care facilities, for which Defendants participate in the Medicare, Medicaid and TRICARE programs.

B.  On September 3, 2021, Relator filed a qui tam action in the United States District Court for the Western District of Michigan captioned *United States ex rel. Patricia Crowe, MD v. Sparrow Medical Group, et al.*, pursuant to the qui tam provisions of the False Claims Act (FCA), 31 U.S.C. § 3730(b) (the Civil Action). Relator filed a first amended complaint on October 4, 2021, alleging, among other things, that the Defendants violated the FCA when they improperly billed for non-physician "incident to" services. The United States filed a Notice of No Decision on March 3, 2022.

C.  The Governments contend that Defendants submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C.

48473834.1

§§ 1395-1395lll ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE").

   D. The Governments contend that they have certain civil claims against Defendants arising from improper billing of services under a physician's National Provider Identifier (NPI) as if the physician rendered the services where the services were rendered by mid-level providers at Defendants' locations for evaluation and management (E/M) CPT Codes 99211-99215 and for new patients across all locations for CPT Codes 99201-99205, during the period from January 1, 2016, through June 30, 2022. That conduct is referred to below as the "Covered Conduct."

   E. This Settlement Agreement is neither an admission of liability by Defendants nor a concession by the Governments that their claims are not well founded.

   F. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

   To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

   1. Defendants shall pay to the Governments SIX HUNDRED SEVENTY-ONE THOUSAND, THREE HUNDRED TEN DOLLARS ($671,310) (Settlement Amount), of which $335,655 is restitution, no later than 30 days after the Effective Date of this Agreement. The Settlement Amount shall be paid to the Governments as follows:

     a. Defendants shall pay to the United States the sum of $622,519.62 ("Federal Settlement Amount"), by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Michigan.

2

48473834.1

      b. Defendants shall pay to the State of Michigan the sum of $48,790.38 ("State Settlement Amount"), by electronic funds transfer pursuant to written instructions to be provided by the State of Michigan.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $105,828.34 to Relator by electronic funds transfer (Relator's Federal Share).

3. Conditioned upon the State receiving the Settlement Amount and as soon as feasible after receipt, the State shall pay $8,294.36 to Relator by electronic funds transfer (Relator's State Share).

4. Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and upon the Defendants' full payment of the Settlement Amount, the Governments release the Defendants from any civil or administrative monetary claim the Governments have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; Michigan Medicaid False Claims Act, MCL 400.607; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5. Notwithstanding the releases given in this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

      a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b. Any criminal liability;

      c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

48473834.1

  d. Any liability to the Governments (or their agencies) for any conduct other than the Covered Conduct;

  e. Any liability based upon obligations created by this Agreement;

  f. Any liability of individuals.

6. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but hereby agrees and confirms that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Federal and State Share, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the Governments, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, or under the Michigan Medicaid False Claims Act, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7. Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases Defendants from any liability to Relator arising from the filing of the Civil Action, except for claims brought against Defendants arising out of Relator's Employment Agreement, or any employment or contractual relationship between Relator and Defendants, or under 31 U.S.C. § 3730(d), for expenses or attorneys' fees and costs. Relator and the Defendants have reached an agreement set forth in Paragraph 15 where the Defendants will pay $275,000 for legal fees only representing the entire amount of expenses and legal fees the Relator incurred in the Civil Action and no further expenses or legal fees for the Civil Action will be incurred. Once the legal fees are paid to the Mendenhall Legal Group the Relator will dismiss with prejudice the upcoding and provider based claims of the Amended Complaint by filing a stipulated dismissal within seven days of the Mendenhall Law Group receiving the payment of $275,000.

8. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. Defendants fully and finally release the Governments, their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Governments, their agencies, officers, agents, employees, and servants, related to the Covered Conduct or the Governments' investigation or prosecution thereof.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier, TRICARE or any state payer) related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11. Defendants agree to the following:

   a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

(1) The matters covered by this Agreement;

(2) The United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) The negotiation and performance of this Agreement; and

(5) The payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorney's fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program and TRICARE Program (hereinafter referred to as Unallowable Costs).

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid or TRICARE Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not

48473834.1

limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

12.    Defendants agree to cooperate fully and truthfully with the Governments' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the Governments, upon request, complete and unredacted copies of all non-privileged documents,

48473834.1

reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that has been performed by another on their behalf.

13.     This Agreement is intended to be for the benefit of the Parties only.

14.     Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of claims related to "Incident To Billing" as alleged in paragraphs 124 through 136 of the amended complaint, with prejudice, pursuant to Rule 41(a)(1), and without prejudice to the Governments as to any remaining claims, and Relator agrees to a dismissal with prejudice of any remaining claims against Defendants as noted in paragraph 7 above.

15.     Defendants agree to pay Relator attorney fees of $275,000.

16.     With the exception of paragraph 15, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

48473834.1

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

23. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24. All Parties consent to the Governments' disclosure of this Agreement, and information about this Agreement, to the public.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

MARK A. TOTTEN
United States Attorney

DATED: 6/28/23    BY: *[signature]*
CAROLYN ALMASSIAN
Assistant United States Attorney
U.S. Attorney's Office, Western District of Michigan


DATED: 6/28/23    BY: Lisa M. Re /seg
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

48514003.1

DATED: 06/26/2023   BY: *BLEY.PAUL.NICHOLAS.1099873821* (Digitally signed by BLEY.PAUL.NICHOLAS.109987382, Date: 2023.06.26 17:20:04 -04'00')
for
SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

48473834.1

THE STATE OF MICHIGAN

DATED: 06/28/2023     BY: _____
TIMOTHY C. ERICKSON
Assistant Attorney General
Health Care Fraud Division
Michigan Department of Attorney General


DATED: 6/28/2023     BY: _____
MEGHAN E. GROEN
Senior Deputy Director
Behavioral and Physical Health and Aging Services Administration
Michigan Department of Health and Human Services

48473834.1

<u>DEFENDANTS SPARROW CARE NETWORK, SPARROW MEDICAL GROUP, SPARROW HEALTH SYSTEM</u>

DATED: 06/27/2023        BY: _____

MARK S. PENDERY
Honigman, LLP

Counsel for Defendants

Edward W. Sparrow Hospital Association d/b/a Sparrow Medical Group

Dated: 6/27/2023        By: _____

Its: John Hyden, VP and Chief Legal, Risk and Integrity Officer

Sparrow Care Network

Dated: 6/27/2023        By: _____

Its: John Hyden, VP and Chief Legal, Risk and Integrity Officer

Sparrow Health System

Dated: 6/27/2023        By: _____

Its: John Hyden, VP and Chief Legal, Risk and Integrity Officer

48514003.1

PATRICIA M. CROWE- RELATOR

DATED: 6/26/2023    BY: _____
                        PATRICIA CROWE, M.D.


DATED: 6/27/23     BY: _____
                        WARNER MENDENHALL
                        Mendenhall Law Group

                        DAVID L. HARON
                        Hoyer Law Group

                        Counsel for Patricia Crowe, M.D.

13

48473834.1